| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:12-CR-276(2) |
| | § | |
| DOUGLAS MARK YBARRA, JR. | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Douglas Mark Ybarra, Jr.'s ("Ybarra") Motion Requesting a Compassionate Release under 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g) (#153), wherein Ybarra requests that the court modify his sentence and immediately release him from prison due to the threat of Coronavirus Disease 2019 ("COVID-19"). The Government opposes the motion (#156). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. Also pending before the court is Ybarra's Motion Requesting a Public Defender (#154). Having considered the motions, the Government's response, Probation's recommendation, and the applicable law, the court is of the opinion that the motions should be denied.

I. Background

On November 14, 2012, a federal grand jury in the Eastern District of Texas returned an Indictment charging Ybarra and 3 others in Count 1 with Conspiracy to Manufacture, Distribute or Possess with Intent to Manufacture or Distribute Cocaine Base (crack cocaine), in violation of 21 U.S.C. § 846. Ybarra remained a fugitive for almost 4 years until he was arrested on October 7, 2016. On January 26, 2017, Ybarra pleaded guilty to Count 1 of the Indictment pursuant to a non-binding plea agreement. On July 6, 2017, the court sentenced Ybarra to 60 months' imprisonment, followed by a 5-year term of supervised release. He is currently housed at Federal

Detention Center Sea Tac, located in Seattle, Washington ("FDC Sea Tac"). Ybarra's projected release date is January 9, 2021.

II.   Appointment of Counsel

Ybarra requests the appointment of a public defender to assist him with his motion for compassionate release. There is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013).

The court, however, may, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues. *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court.").

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must

demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Ybarra is not entitled to the appointment of counsel to assist him. *See United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Moreover, Ybarra provides no basis for the court to conclude that the appointment of counsel would aid him in obtaining relief. Ybarra has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel. Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). Accordingly, Ybarra's motion for appointment of counsel is denied.

III.   Compassionate Release

On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

> defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock

4

foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Harris*, No. 20-1723, 2020 WL 4048690, at *1 (3d Cir. July 20, 2020); *United States v. Springer*, No. 20-5000, 2020 WL 3989451, at *3 (10th Cir. July 15, 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

On June 12, 2020, Ybarra submitted a request for compassionate release to the warden of the facility where he is housed, claiming that his underlying health issues include obesity and failure of the appendix. The warden, I. Jacquez, responded on June 16, 2020, and denied his request because Ybarra's medical conditions did not warrant early release. Warden Jacquez observed that Ybarra's medical records only reflect issues of Arthropathy (referring to diseases of the joints). Probation reports that Ybarra's arthropathy is not considered a terminal or a debilitating medical condition. The warden also noted that Ybarra has "an active warrant out of the State of Texas." Although Ybarra appears to have pursued his administrative remedies before filing the present motion, nothing in his motion indicates that extraordinary and compelling reasons exist to reduce his sentence and release him from confinement.

5

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

In the instant motion, Ybarra, age 28, contends that he is eligible for compassionate release due to his medical condition, claiming to suffer from obesity and failure of the appendix. The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). A review of Ybarra's Presentence Investigation Report ("PSR"), prepared on May 22, 2017, reveals that he reported that he previously had issues with his appendix and was given antibiotics instead of surgery. He stated that he was treated at a hospital in Dallas but walked out of the hospital early, after only a few days, apparently without medical approval. He related that he experienced sharp pains in his stomach when it is cold outside or when he has not had enough to eat or smokes. According to the PSR, he was not being treated for any medical conditions while in detention. Probation reports that BOP medical records received by the Probation Office indicate that Ybarra had a severe sprain in his left ankle in February 2020 and received treatment for the injury. The medical records also reflect that Ybarra has a Body Mass Index of 47, confirming that he is quite obese. The medical records note, however, that: "He has been observed working in the basement and ambulates with a steady gait. He has a full range of motion of all extremities." Thus, Ybarra's medical summary does not meet the criteria listed in the guidelines. His reported medical condition is not terminal, nor does it substantially diminish

his ability to provide self-care. Hence, Ybarra has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence. Even if Ybarra had provided evidence that he was suffering from such a medical condition, "compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, the defendant has an extensive criminal history, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94.

Ybarra's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Ybarra for any "other" reason. In exercising its discretion, the court also finds that no extraordinary and compelling reasons exist in relation to Ybarra's situation. Ybarra is housed in general population at FDC Sea Tac. His medical records indicated that Ybarra "has not complained of any symptoms related to COVID-19" and "[h]e has not had any known exposure to COVID-19 while at FDC Sea Tac." As of August 22, 2020, the figures available at www.bop.gov list 24 inmates, out of a total of 688, and 5 staff members at FDC Sea Tac as currently positive for COVID-19. The figures also indicate that 1 inmate has recovered, and no one has succumbed to the disease. Therefore, although Ybarra expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat him, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify

his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19). Thus, Ybarra has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to release him from prison.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3353(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94. The nature and circumstances of Ybarra's offense of conviction entails his participating in a conspiracy to distribute cocaine base (crack cocaine). According to his PSR, case materials show that he was involved in the conspiracy from at least May 2012 until his arrest in October 2016. His role in the conspiracy was to transport and distribute cocaine base from various sources which would be distributed to others in the Eastern and Northern Districts of Texas. Ybarra served as a source of supply of powder cocaine to coconspirators who would convert it into cocaine base. In July 2012, he sold 27.63 grams of powder cocaine to a cooperating defendant for $850 in a drug store parking lot in Dallas, Texas. Ybarra was also involved in a series of text message exchanges with coconspirators in which he discussed cocaine quantities and deliveries.

Ybarra has an extensive criminal history dating from age 14, including prior convictions for unauthorized use of a motor vehicle, theft of property, evading arrest/detention, burglary of a vehicle (2), burglary of a habitation, possession of a controlled substance (cocaine), possession of marijuana (2), and tampering with physical evidence. Ybarra failed to comply with previous terms of probation, was on probation at the time of the offense of conviction, and has a history of daily substance abuse. In addition, there is an active warrant for his arrest from the State of Texas, and, presumably, he would immediately go into state custody if released from federal custody. Under the circumstances, the court cannot conclude that Ybarra would not pose a danger to the safety of any other person or to the community, if released from confinement.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020). The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. To date, the BOP has placed 7,593 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine

11

where a prisoner is housed; thus, the court is without the authority to order home confinement. 18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)). Here, Ybarra's track record is similarly a poor one.

In short, Ybarra has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 2020 WL 1940570, at *4-5 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 2020 WL 1940570, at *5.

IV. Conclusion

In accordance with the foregoing analysis, Ybarra's Motion for Compassionate Release (#153) and Motion Requesting a Public Defender (#154) are DENIED.

SIGNED at Beaumont, Texas, this 24th day of August, 2020.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE